United States District Court
Southern District of Texas
**ENTERED**
October 25, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OLGA G. PACHECO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00283 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Olga Pacheco brought this action on November 18, 2020, seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1). On July 26, 2021, Plaintiff filed a Brief in Support of Claim, construed as a Motion for Summary Judgment. (D.E. 16). On September 20, 2021, Defendant filed a Response, construed as a Cross Motion for Summary Judgment. (D.E. 22). For the reasons below, the undersigned **RECOMMENDS** the ALJ's decision is supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

## I.    JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's

decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's residual functional capacity ("RFC"), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

2 / 26

### III.    ISSUES PRESENTED

Plaintiff contends (1) the ALJ failed to properly consider all of her impairments, both severe and non-severe, when determining her ability to perform work-related activities, specifically her right shoulder tendinitis and carpal tunnel syndrome; (2) the ALJ improperly determined Plaintiff could perform other jobs at the light exertional level because the vocational expert ("VE") testified Plaintiff's RFC precludes light work and (3) the ALJ erred by finding Plaintiff could perform the job of a hand packager which is medium level work because of her standing/walking restriction and also that 35,000 available jobs is not a significant number in the national economy.  (D.E. 16).

### IV.    PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on May 9, 2019, alleging disability as of September 30, 2018, due to schizophrenia, hallucination, rheumatoid arthritis, carpal tunnel right side, high blood pressure, cholesterol, anemia, depression, anxiety panic attacks and a heart condition.  (D.E. 14-4, Pages 3, 12, 20-21, 23, 33 and 42-43 and D.E. 14-8, Pages 2-11).  After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on May 5, 2020, at which Plaintiff, who was represented by counsel, and a VE testified.  (D.E. 14-3, Pages 33-53 and D.E. 14-7, Page 32).  The ALJ issued an unfavorable decision on May 27, 2020, finding Plaintiff not disabled from September 30, 2018, the alleged onset date, through the date of the decision.  (D.E. 14-3, Pages 8-27).

The Appeals Council declined Plaintiff's request for review on September 18, 2020, making the ALJ's May 27, 2020 decision final.  (D.E. 14-3, Pages 2-5).  Plaintiff then filed this action on November 18, 2020, seeking review of the Commissioner's final decision.  (D.E. 1).

## V.     RECORD SUMMARY[1]

Plaintiff was treated at Westside Family Health Center on November 3, 2016 to establish care.  (D.E. 14-13, Pages 19-22).  Plaintiff reported she takes medication for back, foot and hand pain and joint swelling in her hands.  (D.E. 14-13, Page 19).  She reported no exercise intolerance, no muscle aches or weakness, no joint or back pain and no swelling in the extremities.  (D.E. 14-13, Page 21).  She is noted as ambulating normally, having a normal mood and affect and being oriented to time, place and person with normal memory and good judgment, normal gait.  (D.E. 14-13, Page 21).  Plaintiff is further noted as having normal strength and tone and normal movement of all extremities.  (D.E. 14-13, Page 21).

On December 29, 2016, imaging of Plaintiff's spine showed "[m]oderate multilevel degenerative changes without acute fracture or subluxation."  (D.E. 14-14, Page 10).   On January 10, 2017, Plaintiff was treated at Westside Family Health Center for a cold.  (D.E. 14-13, Pages 7-9).  Plaintiff reported she worked as a home health aide and had no exercise intolerance, no joint pain and no swelling in any extremity.  (D.E. 14-13, Page 9).  She is noted as ambulatory.  (D.E. 14-13, Page 9).

Plaintiff was again treated at Westside Family Health Center on March 14, 2018.  (D.E. 14-12, Pages 41-44).  Her chief complaint was right shoulder pain.  (D.E. 14-12, Pages 40 and 43).  Plaintiff is noted as walking without restrictions with weakness, numbness and tingling in her right hand and joint pain in her right shoulder with no exercise intolerance.  (D.E. 14-12, Page 43).  She is further noted as having abnormal strength and tone in her right shoulder which also had a limited range of motion.  (D.E. 14-12, Page 43).  Tinel and Phalen testing was positive for carpal tunnel

---

[1]The undersigned spent a significant amount of time reviewing the entire record in this case.  However, only those portions of the record relevant to the parties' arguments are summarized below.

syndrome on the right but grip strength is noted as normal and there was no muscle wasting.  (D.E. 14-12, Page 43).  Plaintiff was found to have tendonitis in her right shoulder and carpal tunnel syndrome.  (D.E. 14-12, Page 44).  Plaintiff was prescribed a wrist brace, occupational therapy and medication.  (D.E. 14-12, Page 44).

On March 19, 2018, Plaintiff was treated at Christus Spohn Occupational Therapy, undergoing an occupational therapy upper extremity initial evaluation for her right shoulder lesion and right carpal tunnel syndrome.  (D.E. 14-11, Pages 2-5).  Plaintiff is noted as having tingling, weakness and pain when grasping objects and with movement but not when resting.  (D.E. 14-11, Pages 2 and 4).  Plaintiff reported she still cared for her mother full-time.  (D.E. 14-11, Page 4).  Plaintiff also completed an upper extremity functional index report.  (D.E. 14-10, Pages 36 and 38).  She reported "extreme difficulty" with all of her usual work, housework and hobbies, vacuuming, sweeping and raking, doing up buttons, cleaning, laundering clothes, opening a jar and carrying a small suitcase with her right arm and "quite a bit of difficulty" preparing foods, driving, dressing, using tools or appliances, opening doors, tying or lacing shoes or throwing a ball.  (D.E. 14-10, Page 36).

On March 20, 2018, Plaintiff was treated by an occupational therapist at Christus Spohn who reported Plaintiff completed the required exercises and that Plaintiff reported her "arm feels better after the exercises."  (D.E. 14-11, Page 6).  The occupational therapist further noted Plaintiff had some discomfort but that "patient already noting less pain in upper right extremity."  (D.E. 14-11, Page 6).  While again being treated on March 27 and March 29, 2018 and April 3, 2018, Plaintiff is noted as stating her "shoulder and right upper extremity always in pain."  (D.E. 14-11, Pages 7-8).  Plaintiff is further noted as completing all occupational exercises and as continuing to approve and "responding well."  (D.E. 14-11, Pages 7-9).  Imaging of Plaintiff's right shoulder on

April 4, 2018 shows "[m]inimal degenerative changes of the right shoulder without radiographic evidence of acute bony abnormality." (D.E. 14-13, Page 49). Imaging of her chest the same day showed "[n]o acute cardiopulmonary process." (D.E. 14-13, Page 50).

During her April 5, 2018 occupational therapy treatment, Plaintiff noted she fell on her left knee while trying to climb a truck and that she was having pain in her right hand. (D.E. 14-11, Page 10). The next day, Plaintiff stated she was in more pain because she cleaned her house, but her pain improved with heat treatment,. (D.E. 14-11, Page 11). Plaintiff is further noted as "doing most activities well but with reports of pain in her upper right extremity and numbness in her fingers." (D.E. 14-11, Page 11). On April 11, 2018, Plaintiff's occupational therapist noted Plaintiff continued to improve her range of motion and strength in her upper right extremity. (D.E. 14-11, Page 12). On April 13 and 16, 2018, Plaintiff was reported as "continu[ing] to show steady progress and [she] reported no pain at the end of the session." (D.E. 14-11, Page 13).

On April 19, 2018, Plaintiff was treated at Westside Family Health Center with a chief complaint of right arm pain. (D.E. 14-12, Pages 37-40). Plaintiff reported her "right arm is getting better but still [has] numbness to fingertips, has trouble writ[ing], or hold[ing] items with right hand." (D.E. 14-12, Page 37). Plaintiff is noted as ambulatory and that her "right arm is getting a little better" with "some numbness" and she still drops things. (D.E. 14-12, Page 39). Further, her "[r]ight shoulder is getting better" with therapy three times a week. (D.E. 14-12, Page 39). Plaintiff reported chest pain, right shoulder pain that had improved, no swelling in any extremities and right-hand weakness, tingling and numbness with no exercise intolerance. (D.E. 14-12, Page 39). Plaintiff is noted as having tendonitis in her right shoulder and carpal tunnel in her right wrist. (D.E. 14-12, Page 40). It is further noted a nerve conduction study was needed for her right upper extremity. (D.E. 14-12, Page 40).

Plaintiff was treated again for her right shoulder lesion and right carpal tunnel syndrome on March 22 and April 24, 2018 and is noted has having a decreased range of motion in her right shoulder and decreased grip strength in her right hand.  (D.E. 14-10, Pages 9 and 11).  On April 24, 2018, Plaintiff reported her home exercises were improving her ailments.  (D.E. 14-10, Page 15).  Plaintiff is also noted as having "met all short term and long term goals" and that she will continue to improve her range of motion and strength.  (D.E. 14-10, Page 15).  On April 26, 2018, Plaintiff reported more pain after scrubbing the carpets and on May 2, 2018, Plaintiff reported she fell trying to pick up her grandson. (D.E. 14-10, Pages 16-17).

On April 26, 2018, Plaintiff was treated at Westside Family Health Center with a chief complaint of chest pain and blood pressure issues.  (D.E. 14-12, Pages 34-36).  Plaintiff is noted as ambulatory and walking without restrictions with a "heavy" exercise level.  (D.E. 14-12, Pages 35-36).  Plaintiff reported fatigue and chest pain with left hand numbness during times of stress.  (D.E. 14-12, Page 36).  Plaintiff is noted as having a "grip strength mildly diminished on the right but no muscle wasting."  (D.E. 14-12, Page 36).  Stress testing on May 2, 2018 was normal with no evidence of ischemia, scar, or arrhythmias with a normal EKG.  (D.E. 14-13, Pages 42-48).

On May 4, 2018, Plaintiff is noted as having improving strength and functional use of her right shoulder and arm while being treated at Christus Spohn Rehabilitative Services.  (D.E. 14-10, Page 18).  A nerve conduction study of Plaintiff's right upper extremity was conducted the same day at Corpus Christi Neurology which "revealed a mild compressive neuropathy of the right median nerve at the wrist i.e. a mild case of carpal tunnel syndrome."  (D.E. 14-13, Pages 36-41).  Plaintiff is noted has continuing to improve her range of motion and strength in her right shoulder and hand while being treated at Christus Spohn Rehabilitative Services on May 8, 9, and 11, 2018.  (D.E. 14-10, Pages 19-22).

On May 15, 2018, Plaintiff was again treated at Christus Spohn Rehabilitative Services and again completed an upper extremity functional report.  (D.E. 14-10, Page 7).  Plaintiff reported moderate difficulty with sleeping due to insomnia, "a little bit of difficulty" with lifting a bag of groceries above her head or to waist level and "no difficulty" with any other activities, including opening a jar, throwing a ball, preparing food, driving, using tools or appliances, carrying a small suitcase with her right arm, grooming, preparing food, driving, doing up buttons, cleaning, tying and lacing her shoes, vacuuming or sweeping, laundering clothes or any of her other usual work, housework or hobbies. (D.E. 14-10, Page 7).  Plaintiff is noted as having "made excellent progress [meeting] all goals and reports no pain in her right upper extremity."  (D.E. 14-10, Pages 22-23).  She further stated her home exercises "have really worked" and she was "ready for discharge." (D.E. 14-24, Page 61).  She was discharged from occupational therapy the same day with a note that she had "made excellent progress."  (D.E. 14-25, Page 2).

A June 6, 2018 echocardiogram was normal.  (D.E. 14-24, Pages 33-34).  Plaintiff was treated at Westside Family Health Center on August 23, 2018 for heart problems.  (D.E. 14-12, Pages 29-33).  Plaintiff's exercise level is noted as "heavy" and she is further noted as ambulatory and walking without restrictions.  (D.E. 14-12, Pages 31-32).  Plaintiff reported fatigue, chest pain, depression and anxiety but no exercise intolerance.  (D.E. 14-12, Page 32).  Plaintiff is noted as having normal strength and tone and no edema in any of her extremities.  (D.E. 14-12, Page 33). Plaintiff was found to have tendonitis in her right shoulder which was treated with medication. (D.E. 14-12, Page 33).

On January 22 and 29, 2019, Plaintiff was treated at Westside Family Health Center for her blood pressure issues.  (D.E. 14-12, Pages 22-29).  Her blood pressure is noted as "not at goal" and she was scheduled for a follow-up in one week.  (D.E. 14-12, Page 25).  Plaintiff reported

about a month previous it felt like an elephant was sitting on her chest but she did not seek treatment because she was taking care of her infant grandson and she felt better after taking a nap and medication.  (D.E. 14-12, Page 28).  Plaintiff reported no fatigue, no exercise intolerance, no muscle aches or weakness and no pain or tenderness.  (D.E. 14-12, Page 28).  Plaintiff is noted as having normal tone and range of motion with a normal gait and being alert and oriented to time, place and person with normal memory, judgment and insight.  (D.E. 14-12, Page 29).  Plaintiff is also noted as ambulatory and walking without restrictions with a "heavy" exercise level.  (D.E. 14-12, Pages 25 and 27).  Plaintiff was advised to follow up with a cardiologist.  (D.E. 14-12, Page 29).

Plaintiff was treated at Christus Spohn Specialty Clinic on April 2, 2019 with a chief complaint of chest pain.  (D.E. 14-12, Pages 18-22).  It was determined to be "atypical chest pain, unlikely to be cardiac in origin."  (D.E. 14-12, Page 21).  Plaintiff reported "her anxiety is a likely source of the pain" and her stress test and echo are noted as within normal limits.  (D.E. 14-12, Page 21).

A disability report dated May 9, 2019 indicates Plaintiff "was in pain the entire time she was in the office, no other outstanding behavior."  (D.E. 14-9, Page 11).  Plaintiff is noted has having no difficulty understanding, concentrating, talking, answering, sitting, standing, walking, using her hands or writing.  (D.E. 14-9, Page 11).

On May 23, 2019, Plaintiff was treated at Westside Family Health Center for body pains. (D.E. 14-12, Pages 14-18).  Plaintiff reported she was "in so much pain all over, hard to walk around" and that her "feet and hands swell up."  (D.E. 14-12, Page 17).  She further reported her pain had increased in the past month and she "has a 2 year old grandson she is trying to keep up with."  (D.E. 14-12, Page 17).  Plaintiff is noted as well-nourished and developed and as

ambulating normally.  (D.E. 14-21, Page 17).  She is further noted as being depressed, oriented to time, place and person with normal memory and good judgment.  (D.E. 14-12, Page 17).  Plaintiff is further noted as having mild swelling in the joints of the hands.  (D.E. 14-12, Page 17).  She was found to have arthritis and her medications were continued.  (D.E. 14-18, Page 16).  Imaging of Plaintiff's left and right hands on May 28, 2019 were normal.  (D.E. 14-18, Pages 24-25).

In a June 18, 2019 function report, Plaintiff reported she was not able to concentrate, was too tired and in too much pain and could carry no more than 20 pounds with her right arm.  (D.E. 14-9, Page 21).  Plaintiff also reported she had difficulty writing because of right hand numbness.  (D.E. 14-9, Page 21).  She also reported a typical day was getting up and getting dressed, waking her grandson for school, making coffee and breakfast, taking her medication and then spending the rest of the day cleaning and trying to move from her old address to her new address.  (D.E. 14-9, Page 22).  She also stated she watched her grandchildren, ages two to 14 years old, and cooks for them and changes diapers and her ex-husband helps to bathe and clean them.  (D.E. 14-9, Page 22).  Plaintiff reported some difficulty with personal care, that she prepared her own meals daily for 30 minutes to an hour, swept and mopped for two hours every two days, does not do yard work because her hands and feet swell, and she drives, grocery shops alone and can manage her own bills and money.  (D.E. 14-9, Pages 23-25).  Plaintiff also stated she reads devotionals and the bible twice a day but has difficulty concentrating and she also spends time with her family.  (D.E. 14-9, Pages 25-26).  She reported she used a right-hand wrist wrap at night due to pain and swelling.  (D.E. 14-9, Page 27).

On June 24, 2019, state agency physician Dr. Roberta Herman opined Plaintiff had a physical RFC which allowed for lifting and/or carrying 50 pounds occasionally, 25 pounds frequently and she could stand and/or sit with normal breaks for six hours in an eight-hour workday

and did not have any other limitations, including manipulative or postural limitations.  (D.E. 14-4, Page 8).

On July 1, 2019, state agency doctor Dr. Mark Schade, Ph.D., noted Plaintiff's depressive disorder was non-severe, finding there was no evidence in the medical record of schizophrenia, hallucinations or panic attacks.  (D.E. 14-4, Page 5).  He further opined Plaintiff had a mental RFC with only mild limitations in her ability to understand, remember or apply information; interact with others, concentrate, persist, or maintain pace and Plaintiff's "allegations not well supported ."  (D.E. 14-4, Pages 5-6).

Plaintiff's applications were denied at the initial level on July 8, 2019.  (D.E. 14-4, Pages 10 and 19 and D.E. 14-5, Pages 14-15).

Plaintiff was treated at Westside Family Health Center on July 24, 2019 with a chief complaint of arthritis.  (D.E. 14-18, Pages 3-12).  Plaintiff is noted as walking without restrictions. (D.E. 14-18, Pages 6 and 11).  She reported "still having pain but it is improved [and is] 60% better."  (D.E. 14-18, Page 11).  Plaintiff also reported muscle aches and joint pain with improving depression and anxiety.  (D.E. 14-18, Page 11).  Plaintiff is noted as having a normal mood and affect, being alert to time, place and person and having a normal memory and good judgment. (D.E. 14-18, Page 11).  No edema was noted in her extremities and she had normal motor strength and tone with tenderness in both arms and back.  (D.E. 14-18, Page 11).  Plaintiff's medications for treatment of fibromyalgia and depression were continued.  (D.E. 14-18, Page 12).

From September 12 to 24, 2019, Plaintiff received mental health treatment at Nueces Center for Mental Health.  (D.E. 14-20).  Plaintiff reported having suicidal thoughts and auditory hallucinations during the past month.  (D.E. 14-20, Pages 4 and 10).  Plaintiff reported her high blood pressure, high cholesterol, heart murmur and fibromyalgia interfered with her daily living.

(D.E. 14-20, Page 5).  Plaintiff is noted as oriented to time, place and person with a depressed mood and affect and normal thought process, memory and thinking.  (D.E. 14-20, Page 7).  Plaintiff agreed to a voluntary hospitalization.  (D.E. 14-20, Pages 8 and 14).  However, Plaintiff was not admitted because she "wanted to go home because she couldn't miss a dose of her medication." (D.E. 14-20, Pages 24, 26 and 59-60).  On September 18, 2019, Plaintiff reported her fibromyalgia pain was seven out of ten.  (D.E. 14-20, Page 43).  She also reported living alone and spending her day babysitting her two year old grandson.  (D.E. 14-20, Page 47).

On September 20, 2019, Plaintiff was again treated at Westside Family Health Center for a skin rash.  (D.E. 14-19, Pages 17-20).  Plaintiff is noted as ambulating normally.  (D.E. 14-19, Page 11).  Plaintiff reported she was living with her daughter and was under a lot stress because she watches her two year old grandson and her daughter "is becoming jealous of her relationship with the child."  (D.E. 14-19, Page 20).  Plaintiff reported she was told to leave her daughter's house, was hearing auditory hallucinations and seeing shadows and was no longer left alone with her grandson.  (D.E. 14-19, Page 20).  Plaintiff also reported fatigue but no exercise intolerance and "no arm pain on exertion."  (D.E. 14-19, Page 20).  She is noted as active and alert with a normal mood and flat affect, being oriented to time, place and person with good judgment and normal memory and cooperative and calm with clear speech.  (D.E. 14-19, Page 20).  Plaintiff is noted as having normal strength and tone and no edema in her extremities.  (D.E. 14-19, Page 20).  Plaintiff was referred to counseling for severe major depression with psychotic features and her medications were continued for depression as well as fibromyalgia.  (D.E. 14-19, Page 21).

On October 17, 2019, Plaintiff was treated at Corpus Christi Medical Center for a drug overdose.  (D.E. 14-21, Page 22).  Plaintiff stated she "wanted to kill herself so she took 7 Seroquel (treats depression)."  (D.E. 14-21, Pages 22-30).  Plaintiff is noted as awake, alert and oriented on

exam with a normal affect and mood.  (D.E. 14-21, Page 24).  Plaintiff was found to have suicidal ideation and was placed on a voluntary psychiatric hold.  (D.E. 14-21, Pages 27-30).

Plaintiff initially attended mental health counseling at Christus Spohn Behavioral Health Clinic on October 23, 2019.  (D.E. 14-21, Page 19).  She is noted as being alert, oriented and in a good mood.  (D.E. 14-21, Page 19).  Plaintiff reported she was homeless/living between homes since the death of her mother one year prior.   (D.E. 14-21, Page 19).   She further reported experiencing a depressed mood, low motivation, crying easily and difficulty concentrating and focusing.  (D.E. 14-21, Page 19).

On November 22, 2019, state agency doctor Dr. Sarah Jackson, Ph.D., noted Plaintiff's depressive disorder was non severe finding there was no evidence in the medical record of schizophrenia, hallucinations or panic attacks.  (D.E. 14-4, Page 26). She further opined Plaintiff had a mental RFC with only mild limitations in her ability to understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself and she could function independently, appropriately and effectively on a sustained basis. (D.E. 14-4, Page 26).

On November 25, 2019, state agency physician Dr. Amita Hegde opined Plaintiff had a physical RFC which allowed for lifting and/or carrying 50 pounds occasionally, 25 pounds frequently and she could stand and/or sit with normal breaks for six hours in an eight-hour workday and did not have any other limitations, including manipulative or postural limitations.  She further opined Plaintiff could function independently, appropriately and effectively on a sustained basis. (D.E. 14-4, Pages 28-29).

Plaintiff's applications were denied upon reconsideration on November 25, 2019.  (D.E. 14-4, Pages 31 and 41 and D.E. 14-5, Pages 24-25).

Plaintiff received mental health counseling at Christus Spohn Behavioral Health Clinic on December 11, 2019 where she reported she was living with a friend and "would like to return to counseling as she feels it is helpful for her to process her feelings." (D.E. 14-21, Page 18).

On December 18, 2019, Plaintiff was initially treated at the Behavioral Health Center in Robstown. (D.E. 14-23, Page 35). Plaintiff reported she overdosed on Seroquel in October "because her husband wouldn't buy her a car after he promised." (D.E. 14-23, Page 35). She reported no depressive symptoms and no suicidal thoughts and was noted as "[i]mproving." (D.E. 14-23, Page 36). Plaintiff is noted as having an anxious mood and affect. (D.E. 14-23, Page 37). She was again treated on December 20, 2019 and is noted as having a normal affect and calm mood and reporting a difficulty managing her mental health ailments. (D.E. 14-23, Page 47). Plaintiff reported she was not taking any medications because she was due to have a colonoscopy. (D.E. 14-23, Page 47). Plaintiff also reported "her daily devotional and engaging with her grandchildren help to keep her busy and help her drown out her hallucinations" and her ex-husband and daughter are supportive. (D.E. 14-23, Page 47). Plaintiff reported she lives with her daughter and grandson. (D.E. 14-23, Page 47). Her speech is noted as clear and "thoughts were connected." (D.E. 14-23, Page 47). Plaintiff failed to show up for her counseling appointment on January 13, 2020. (D.E. 14-26, Page 14).

On January 24, 2020 Plaintiff requested a hearing before an ALJ. (D.E. 14-5, Page 30).

On March 4, 2020, Plaintiff was treated at Westside Family Health Center. (D.E. 14-26, Page 9). Plaintiff's chief complaint was arthritis and having withdrawal symptoms from Cymbalta which she had run out of ten day prior and she reported she did not feel was helping her with her depression and fibromyalgia symptoms. (D.E. 14-26, Pages 9 and 12). Plaintiff also reported she stopped taking two other medications: Gabapentin because "her pain was better" and Seroquel

which she believed was causing her to have nightmares and was not helping as she was still hearing voices and hallucinating.  (D.E. 14-26, Page 12).  Plaintiff reported no suicidal ideations and is noted as having an anxious, agitated and flat affect, being oriented to time, place and person and having normal memory and poor insight.  (D.E. 14-26, Page 12).  She is further noted as being calm, cooperative, maintaining eye contact, speaking clearly, having improving auditory hallucinations and being alert and oriented with an intact insight and thought processes.  (D.E. 14-26, Page 13).  She is noted as walking without restrictions and having normal strength and tone with no edema in any extremity.  (D.E. 14-26, Pages 10 and 13).  Plaintiff is noted as having fibromyalgia and severe major depression with psychotic features.  (D.E. 14-26, Page 13).  Her depression medication was switched from Cymbalta to Zoloft.  (D.E. 14-26, Page 13).  On March 10, 2020, Plaintiff was found to have "chronic but stable anemia which is mild."  (D.E. 14-26, Page 21).

A hearing was held before an ALJ on May 5, 2020.  (D.E. 14-3, Pages 33-53).  Plaintiff was 52 years old on her alleged onset date and 54 years old at the May 5, 2020 hearing.  (D.E. 14-3, Pages 38-39).  Plaintiff testified she had a GED and past relevant work as a home health aide, which included sweeping, mopping, cooking, organizing medication, dusting, laundry, grocery shopping, meal preparation and bathing and providing grooming assistance.  (D.E. 14-3, Pages 40-41, 43, 45-46 and 49).  Plaintiff also testified she had been unable to maintain employment since 2018 when her mother passed away mainly because she could not concentrate due to her psychiatric issues and it was painful to stand and to move due to fibromyalgia.  (D.E. 14-3, Pages 39-44).  Plaintiff stated she could stand for 30 minutes, sit for an hour, could lift ten pounds with her dominant right hand and walk two blocks.  (D.E. 14-3, Page 41).  Plaintiff further stated she

could not help around the house but does babysit for her two year old grandson.  (D.E. 14-3, Page 43-44).

Also at the May 5, 2020 hearing, the VE testified Plaintiff's past relevant work as a home health aide is classified as medium, SVP 3.  (D.E. 14-3, Pages 48-49).  The VE also testified an individual of Plaintiff's age; education; past work; who was limited to medium work with a stand/walk limitation of six hours combined and no sitting limitations; with an ability to carry out, understand and remember simple instructions, perform routine asks, make simple work-related decisions; who could have no interaction with the public and occasional interaction with coworkers; and who could adjust to occasional changes in the routine work environment, could not perform Plaintiff's past work but could perform work at the light level, including assembler of small products and electronics worker.  (D.E. 14-3, Pages 49-50).  The VE initially testified there were no medium level jobs with those restrictions due to the stand/walk restriction, however, the VE later testified that one job at the medium level could be performed which was a hand packager. (D.E. 14-3, Page 50).  The VE further testified that if the same person was limited to using the dominant hand only occasionally, none of the three positions above would be available as they required frequent or constant handling and fingering.  (D.E. 14-3, Page 51).

On May 27, 2020 decision, the ALJ determined Plaintiff had not been under a disability from September 30, 2018 through the date of the decision.  (D.E. 14-3, Page 21).  The ALJ determined Plaintiff had the following severe impairments:  schizoaffective disorder bipolar type, major depressive disorder and fibromyalgia syndrome.  (D.E. 14-3, Page 14).  The ALJ also considered Plaintiff's "diagnoses of mild carpal tunnel syndrome of the right upper extremity and right shoulder tendonitis/lesion," determining "these impairments are not documented as limiting

impairments and are generally responsive to treatment." (D.E. 14-3, Page 14). The ALJ noted as

follows:

> On exams, the claimant exhibited a positive Phalen and Tinnel's, limited range of motion, and mildly diminished grip strength of the right upper extremity, but no crepitus, effusion, bony abnormalities, or muscle wasting. A nerve conduction study revealed only mild compressive neuropathy of the right median nerve at the wrist and mild carpal tunnel syndrome. In addition, imaging of the right shoulder conducted in April 2018 revealed minimal degenerative changes of the right shoulder without radiographic evidence of acute bony abnormality. Strikingly, treatment records from April 2018 to May 2018 indicate that the claimant received occupational and physical therapy for these impairments with significant improvement. For example, she denied right upper extremity pain and acknowledged that her home exercises really worked for her during May 2018 clinical visits.

(D.E. 14-3, Page 14).

The ALJ found these two impairments, singly or in combination, were "not severe because they

are no more than slight abnormalities that have no more than a minimal effect on the claimant's

ability to function within the meaning of the regulations (20 CFR 404.1509 and 404.1522 and

416.909 and 416.922; SSRs 85-28 and 16-3p)." (D.E. 14-3, Page 14).

The ALJ further found Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments. (D.E. 14-3, Page 14).

Determining Plaintiff had the RFC to perform medium work with the limitations described to the

VE without handling and fingering restrictions, the ALJ found Plaintiff could not perform her past

relevant work but could perform a significant number of jobs in the national economy, including

assembler of small products, electronics worker and hand packager. (D.E. 14-3, Pages 16-21).

Accordingly, the ALJ concluded Plaintiff was not disabled from September 30, 2018 through May

27, 2020, the date of the decision. (D.E. 14-3, Pages 21-22).

Plaintiff requested reconsideration of the ALJ's decision on July 22, 2020.  (D.E. 14-7. (Pages 32-34).  The Appeals Council declined Plaintiff's request for review on September 18, 2020, making the ALJ's May 27, 2020 decision final.  (D.E. 14-3, Pages 2-5).

## VI.   ANALYSIS

Plaintiff first contends the ALJ failed to properly consider all of her impairments, both severe and non-severe at Step Two, when determining her ability to perform work-related activities, specifically her right shoulder tendinitis and carpal tunnel syndrome.  Plaintiff asserts the ALJ committed a *Stone* error, using the wrong standard to assess the severity of her impairments.  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (An "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")  In *Stone*, the Fifth Circuit stated ALJs must not only use the stated standard, they must also cite to it in their written decisions or a presumption arises that the wrong severity standard was used.  *Id*. at 1106.  However, the Fifth Circuit later clarified that a case should not be remanded simply because the *Stone* case is not cited by name. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Remand is only appropriate 'where there is no indication the ALJ applied the correct standard.'") (citation omitted).  In *Keel*, the Fifth Circuit found that while the ALJ did not mention the *Stone* standard, the ALJ did cite Social Security Ruling ("SSR") 85-28, which uses the same standard as *Stone*.  *Id*.  ("Though the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" as SSR 85-28 comports with *Stone*).  Further, the Fifth Circuit determined that if the ALJ proceeds past Step Two, any failure to properly apply the *Stone* standard is harmless error if "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ

did not err." *Id*. (Rejecting Plaintiff's argument that the ALJ failed to consider both her severe and non-severe impairments in combination and finding harmless error) (citation omitted).

Here, as in *Keel*, the ALJ did not specifically refer to *Stone* at Step Two but did refer to SSR 85-28.  (D.E. 14-3, Page 14).  Similarly, Plaintiff argues the ALJ failed to consider all of her impairments in combination and it was not harmless error.  However, Plaintiff "does not meaningfully address how the ALJ's application of SSR 85-28 (instead of citing *Stone*) produced a different outcome in her case."  *Keel*, 986 F.3d at 557.  The record demonstrates the ALJ did consider Plaintiff's symptoms "to the extent which these symptoms could reasonably be accepted with the objective medical evidence" and determined that they were not severe.  *Id*. (The burden of showing an error is harmful normally falls upon the party attacking the agency's determination) (citation omitted).  Plaintiff has failed to show she was so functionally impaired by her right arm and right hand ailments that she was precluded from engaging in substantial gainful activity.  *Id*.; 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a) and 416.921(a) (A severe impairment is an one which significantly limits a claimant's physical or mental abilities to do basic work activities).

The record indicates that on March 14, 2018 Tinel and Phalen testing was positive for carpal tunnel syndrome on the right but grip strength is noted as normal and there was no muscle wasting.  (D.E. 14-12, Page 43).  Plaintiff was found to have tendonitis in her right shoulder and carpal tunnel syndrome.  (D.E. 14-12, Page 44).  Plaintiff was prescribed a wrist brace, occupational therapy and medication.  (D.E. 14-12, Page 44).  Imaging of Plaintiff's right shoulder on April 4, 2018 shows "[m]inimal degenerative changes of the right shoulder without radiographic evidence of acute bony abnormality."  (D.E. 14-13, Page 49).  A nerve conduction study of Plaintiff's right upper extremity in May 2018 revealed "a mild case of carpal tunnel syndrome."  (D.E. 14-13, Pages 36-41).  Plaintiff received occupational and rehabilitative therapy

for both her right shoulder and hand and by May 2018, Plaintiff reported having "a little bit of difficulty" with lifting a bag of groceries above her head or to waist level and "no difficulty" with any other activities, including opening a jar, throwing a ball, preparing food, driving, using tools or appliances, carrying a small suitcase with her right arm, grooming, preparing food, driving, doing up buttons, cleaning, tying and lacing her shoes, vacuuming or sweeping, laundering clothes or any of her other usual work, housework or hobbies.  (D.E. 14-10, Page 7).  Further, Plaintiff was noted as having "made excellent progress [meeting] all goals and reports no pain in her right upper extremity."  (D.E. 14-10, Pages 22-23).   In January 2019, Plaintiff reported no exercise intolerance, muscle aches, weakness or any pain or tenderness.  (D.E. 14-12, Page 28).  A disability report dated May 9, 2019 indicates Plaintiff had no problems using her hands or writing.  (D.E. 14-9, Page 11).  On May 23, 2019, Plaintiff is noted as having mild swelling in the joints of her hands and she was found to have arthritis, treated with medication, and imaging of both of her hands the following week were normal.  (D.E. 14-8, Pages 16 and 24-25).  In September 2019, Plaintiff reported fatigue but no exercise intolerance and "no arm pain on exertion."  (D.E. 14-19, Page 20).  In March 2020, Plaintiff reported she had stopped her pain medication because "her pain was better."  (D.E. 14-26, Page 12).  Further, the record is replete with references to Plaintiff having normal strength and tone and no edema in her extremities along with normal musculoskeletal range of motion.  (D.E. 14-12, Pages 29 and 33; D.E. 14-18, Page 11; D.E. 14-19, Page 20; and D.E. 14-26, Pages 10 and 13).

Additionally, the record consistently shows Plaintiff engaged in numerous activities of daily living, including cooking, sweeping and mopping, shopping for groceries, paying bills, reading and continuously caring for her two year old grandson throughout the majority of time at issue.  (D.E. 14-3, Pages 43-44; D.E. 14-9, Pages 22-27; D.E. 14-12, Pages 17 and 28; D.E. 14-

19, Page 20; D.E. 14-20, Page 47; D.E. 14-23, Page 47); *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995) (The Court should consider whether Plaintiff's reported daily activities support alleged activity restrictions). Further, two state agency medical consultants opined Plaintiff had no postural or manipulative limitations and she could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds and could push and/or pull without limitation. (D.E. 14-4, Pages 8 and 28-29).

While the ALJ here did not cite *Stone*, the ALJ did specifically cite SSR 85-28 which the Fifth Circuit has found to be sufficient. Further, at Step Two and throughout the entire opinion, the ALJ thoroughly considered all of Plaintiff's impairments and substantial evidence supports the decision that Plaintiff's right shoulder tendinitis and carpal tunnel syndrome were not severe and did not impose any additional RFC limitations. Plaintiff's testimony regarding her exertional limitations is not consistent with the record, as discussed above. Therefore, the undersigned recommends Plaintiff's first argument is without merit.

Plaintiff next argues the ALJ's determinations at Step Five were improper because (1) the VE's testimony demonstrates Plaintiff's RFC precludes light work and (2) she cannot perform the job of hand packager, which does not exist in significant numbers in the national economy. At the hearing, the VE testified an individual of Plaintiff's age; education; past work; who was limited to medium work with a stand/walk limitation of six hours combined and no sitting limitations; with an ability to carry out, understand and remember simple instructions, perform routine asks, make simple work-related decisions; who could have no interaction with the public and occasional interaction with coworkers; and who could adjust to occasional changes in the routine work environment could not perform Plaintiff's past work but could perform work at the light level, including assembler of small products, electronics worker, and at the medium level as a hand

packer.  (D.E. 14-3, Pages 49-50).  In the decision, the ALJ found Plaintiff had the RFC to perform medium work except that she was limited to standing and walking for six hours combined. (D.E. 14-3, Page 16).  The ALJ further found Plaintiff could understand, remember, and carry out simple instructions and perform routine tasks, make simple work-related decisions, should have no interactions with the general public with only occasional interaction with her co-workers, and can adjust to occasional changes in a routine work environment.  (D.E. 14-3, Page 16).  Relying on the VE's testimony, the ALJ found Plaintiff could perform the jobs of assembler of small products, electronics worker and hand packager.  (D.E. 14-3, Pages 16-21).

At the hearing the VE was asked if "an individual that is limited to a light exertional level and no public, there are no jobs, correct?" to which the VE responded, "Correct."  (D.E. 14-3, Pages 52-53).  Therefore, Plaintiff argues the VE's testimony does not support the ALJ's determination at Step Five because the ALJ determined Plaintiff should have no interactions with the general public but also determined Plaintiff could perform the light exertional jobs of small products and electronics worker.  However, Plaintiff's argument is flawed.  In the decision, the ALJ did not limit Plaintiff to light work, the ALJ limited Plaintiff to medium work.  Therefore, Plaintiff was not an individual "limited to light exertional work" as posed in the question to the VE and as such, the ALJ properly relied on the VE's testimony that such an individual limited to medium work with the restrictions listed above could perform the jobs as described.

In her last argument, Plaintiff asserts the ALJ improperly determined Plaintiff could perform the medium level job of hand packager because it requires standing and walking for more than six hours in an eight-hour workday referencing the Occupational Requirements Survey published by the U.S. Bureau of Labor Statistics.  (D.E. 16-1).  In short, Plaintiff argues the job as a hand packager requires her to spend more time walking and standing than what her RFC allows.

Plaintiff also asserts the job of hand packager, which the VE testified exists at "about 35,000 nationally," is not a job which exists in significant numbers in the national economy as required. Noting that the Fifth Circuit has not set a specific number it deems to be significant but has previously determined 50,000 was sufficient, Plaintiff cites to several district court cases where numbers far less 35,000 were found not to be significant.  (D.E. 16, Pages 12-13).[2]  Notably, Plaintiff does not argue the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT").

The DOT is one of five sources which the Commissioner is required to take administrative notice to determine what "unskilled, sedentary, light and medium jobs exist in the national economy." 20 C.F.R. § 404.1566(d)(1).  The Occupational Requirements Survey Plaintiff cites is not included in this list.  (D.E. 16-1, Pages 9-18); *Sheridan v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-300-MAC-KFC, 2019 WL 6003297, at *9 (E.D. Tex. Aug. 30, 2019) adopted by No. 1:18-cv-300, 2019 WL 6002194 (E.D. Tex. Sept. 18, 2019) (Remand is not warranted because of any alleged discrepancy between the VE's testimony and the Occupational Requirements Survey).

The VE's testimony was based on her education, knowledge, and her professional experience as a vocational rehabilitation counselor, which includes a review of various publications, and she further testified her testimony was consistent with the DOT.  (D.E. 14-3, Pages 47-48 and 51-52).  The VE testified Plaintiff was able to find work as a hand packager based on this professional experience.  If the VE's testimony is inconsistent with the Occupational Requirements Survey as Plaintiff alleges, the ALJ has the discretion to resolve any conflicts with

---

[2]Plaintiff cites to district court decisions where 16,000; 17,000 and 9,200 jobs nationally were found not to be significant.  (D.E. 16, Page 13).  The undersigned notes that the number in this case is more than double at 35,000. Further, Plaintiff has provided no cases which find 35,000 to be insufficient.  Additionally, the other two positions listed by the VE, assembler of small products and electronics worker, have 120,000 and 60,000 jobs available nationally.  These numbers are clearly in excess of what has been previously accepted the Fifth Circuit.

this evidence but is not required to.  SSR-00-4P, 2000 WL 1898704 (ALJ must resolve conflict between DOT and VE's evidence before relying on VE's testimony).  The Fifth Circuit has recognized the value of a VE's testimony over that of publications, including the DOT.  *Carey v Apfel*, 230 F.3d 131,145 (5th Cir. 2000) ("DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.")  "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Id*. (citations omitted).  Here, the record demonstrates the ALJ provided the VE with a hypothetical incorporating all of Plaintiff's limitations, including the standing/walking limitation, and based on the VE's experience, the VE testified Plaintiff could perform other work as a hand packager with 35,000 jobs available in the national economy.  Plaintiff has not shown the VE's testimony is inconsistent with the DOT or that the testimony was otherwise not supported by substantial evidence.  The ALJ properly accepted and relied on the VE's testimony.  *Carey*, 230 F.3d at 146 (Even if there is conflict between a VE's testimony and a publication, including the DOT, the ALJ may rely upon the VE's testimony "provided that the record reflects an adequate basis for doing so.")

Further, when given the opportunity to cross examine the VE, counsel failed to raise these issues, depriving the ALJ of any opportunity to address them.  *Cary*, 230 F.3d at 145-47.  Plaintiff should not be permitted to raise issues as reversible error when they were not "deemed sufficient to merit adversarial development in the administrative hearing.")  Therefore, the undersigned recommends Plaintiff's arguments are again without merit.

## VII.    CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** the ALJ's decision is supported by substantial evidence.  Accordingly, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 16), the Commissioner's Motion for Summary Judgment is **GRANTED** (D.E. 22) and this case be **DISMISSED**.

Respectfully submitted on October 25, 2021.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).